E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
JEREMY K. BEECHER (Cal. Bar No. 301272)
Assistant United States Attorney
General Crimes Section
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-5429
     Facsimile: (213) 894-0141
     E-mail:    Jeremy.Beecher@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 2:23-CR-164-JVS |
|---|---|
| Plaintiff, | **UNITED STATES OF AMERICA'S SENTENCING POSITION** |
| v. | |
| ADRIAN BENAVIDES-SCHORGI,<br>    aka "nonamesw._. ft,"<br>    aka "NONAME SWIFTER,"<br>    aka "Mr. Talkmoney,"<br>    aka "talkmoney," | Hearing Date: June 24, 2024<br>Hearing Time: 10:00 a.m. |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Jeremy K. Beecher, hereby files its sentencing position for defendant Adrian Benavides-Schorgi.

The government's filing is based upon the attached memorandum of points and authorities, the files and records in this case, the Presentence Investigation Report, and any other evidence or argument that the Court may wish to consider at the time of sentencing.

The government reserves the right to file any supplemental sentencing position that may be necessary.

Dated: June 3, 2024                    Respectfully submitted,

                                              E. MARTIN ESTRADA
                                              United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

                /s/
JEREMY K. BEECHER
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  BACKGROUND**

Defendant is a drug dealer who sold minors fentanyl pills that caused them to overdose and nearly die.  Specifically, on May 24, 2022, defendant sold three purported "Molly," or ecstasy, pills to minor victim S.S.  The pills in fact contained fentanyl.  As a result, minor victim S.S. and two friends, minor victims E.M. and J.V., overdosed and were found unconscious by a parent.  They were rushed to the hospital where one was unconscious, intubated, and required a respirator to breathe, while another was connected to oxygen and drifted in and out of consciousness before recovering following intensive medical treatment.  Multiple medical professionals opined that multiple victims likely would have died without medical intervention.

On February 2, 2024, defendant pled guilty to distribution of fentanyl in violation of 21 U.S.C. §§ 841(a), (b)(1)(C), and admitted that on May 24, 2022, he sold pills to S.S. that contained fentanyl and resulted in the hospitalization and serious bodily injury of the minor victims.

For the following reasons, the government recommends the following sentence:  a low-end Guidelines term of 168 months' imprisonment, followed by a five-year period of supervised release, and a special assessment of $100.  The government also requests the Court order defendant to pay restitution in the amount to be determined at a hearing no more than 90 days after sentencing.  See 18 U.S.C. §§ 3663A(c)(1)(B), 3664(d)(5).

## II. STATEMENT OF FACTS

On May 24, 2022, defendant arranged to sell three "Molly," i.e. Ecstasy, pills to victim S.S. (PSR ¶¶ 12, 14.) Surveillance footage from J.V.'s apartment building captures the transaction in which defendant drove up to the apartment building, at which point minor victims S.S. and E.M. walked up to the passenger side of defendant's car and engaged in a transaction with him before returning to the apartment building. (Id. ¶ 21.)

Once inside J.V.'s apartment with the three pills sold to them by defendant, the minor victims "chopped up" the pills and snorted them, with each girl ingesting one pill. (Id. ¶ 14.) Neither S.S. nor E.M. remembered anything that occurred after they ingested the pills defendant sold them. (Id. ¶¶ 14-15.)

Later that evening, J.V. and S.S.'s fathers knocked on the bedroom door after not hearing from the girls. (Id. ¶ 13.) When they opened the door, they found all three girls passed out and unconscious with labored breathing. (Id.)

Paramedics arrived, began treating the unconscious minors and transported them to local hospitals where they were treated for critical injuries. (Id.) J.V. was initially taken to St. John's Medical Center in Santa Monica, where the treating physician stated hers was "one of the most severe" overdoses cases she had treated, and if left untreated, it would have been fatal. (Exhibit B.) J.V. was transferred to Children's Hospital of Los Angeles for a higher level of care in an intensive care unit. (Exhibit B.)

S.S.'s treating physician likewise observed that S.S. arrived at UCLA Medical Center with overdose symptoms including slurring words

and being unable to produce complete sentences, and that without medical care, S.S. would not have survived.  (Exhibit C.)

E.M.'s physician similarly stated that without medical care, it is unclear whether she would have survived.  (Exhibit D.)

Defendant knew that the purported Ecstasy pills he sold the girls contained a controlled substance.  (PSR ¶ 12.)  Although he did not know for a fact that the pills contained fentanyl, he acknowledged in a later interview that on occasion, he sold "Blues" (common vernacular for pills containing opioids) and that the "Blues" he sold could have contained fentanyl.  (Id. ¶¶ 12, 24.)

### III. SENTENCING GUIDELINES CALCULATION

USPO calculates defendant's total offense level as 35.  This offense level results from the following calculation:  a base offense level of 38 because defendant's distribution of fentanyl led to the minor victims' serious bodily injuries; and a three-level reduction for acceptance of responsibility.  (PSR ¶¶ 25-42.)  USPO further calculates defendant's Criminal History to fall within Category I. USPO therefore calculated defendant's Guidelines sentencing range to be 168-210 months.  The government concurs with USPO's Guidelines calculation.  For the following reasons, however, the government disagrees with USPO's sentencing recommendation.

### IV. ARGUMENT

The government believes that the 3553(a) factors, in particular the nature and circumstances of the offense, the need to reflect the seriousness of the crime, the need to promote respect for the law, the need to provide just punishment, the need to afford adequate deterrence, and the need to protect the public, warrant a low-end Guidelines sentence.

### A. The Nature and Circumstances of the Offense Supports a Guidelines Sentence

The nature and circumstances of defendant's crime warrant a Guidelines sentence for two reasons.

First is the ongoing fentanyl epidemic writ large. "The illegal importation, manufacture, distribution, and possession and improper use of controlled substances have had a substantial and detrimental effect on the health and general welfare of the American people." 21 U.S.C. § 801(2). Fentanyl, specifically, is a highly addictive synthetic opioid that is 50 times more potent than heroin and 100 times more potent than morphine. Fentanyl and its analogues have devastated communities across the United States and are fueling the ongoing overdose epidemic, which killed approximately 110,000 Americans in 2022. (Exhibit A at 2.) As a result, fentanyl overdose is now the leading cause of death for Americans ages 18 to 45. (Id. at 1.) Drug traffickers are flooding communities with fentanyl disguised in the form of fake pills. (Id. at 2.) These fake pills often are made to appear legitimate using pill presses and marketed by drug traffickers to deceive Americans into thinking that they are something other than fentanyl pills. (Id.) Defendant has contributed to the nationwide devastation by trafficking in fentanyl while holding it out as something else.

Second, defendant sold the pills to minors. Each of the girls to whom he delivered pills was 15 years old at the time they took the pills and overdosed. Defendant, by contrast, was 21 years old and knew, or should have known, that while trafficking dangerous controlled substances is wrong, delivering them to 15-year-olds is

simply reprehensible. By doing so, defendant jeopardized three young lives and made a lifelong impact on the victims.

### B. History and Characteristics of Defendant

Defendant's history and characteristics warrant a low-end Guidelines sentence. See 18 U.S.C. § 3553(a)(1). Defendant is a drug dealer who, while he often sold marijuana, also trafficked in other substances including "Blues," or opioid pills, and Ecstasy. (PSR ¶¶ 43-47.) The government acknowledges the mitigating information set forth in the PSR, including his age and upbringing, and believes a low-end Guidelines sentence adequately accounts for those facts while also balancing the remaining factors the Court must consider in fashioning an appropriate sentence.

### C. Need to Reflect Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, Afford Adequate Deterrence, and Protect the Public

A low-end Guidelines sentence will reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence, and protect the public. See 18 U.S.C. § 3553(a)(2).

There is nothing more serious than the loss of a human life. Defendant's conduct nearly caused the loss of three young lives and caused irreparable harm to the victims. A low-end Guidelines sentence reflects the serious nature of defendant's criminal conduct and provides just punishment for this most serious conduct.

In this case, there is also a particularly strong need for the sentence to deter defendant and others from committing similar crimes with potentially deadly consequences. See 18 U.S.C. § 3553(a)(2)(B) (the sentence imposed must "afford adequate deterrence to criminal conduct," which encompasses both specific and general deterrence).

Drugs like fentanyl are destroying the lives of those who live within Central District communities. They pose a real, palpable danger to the community, and every effort must be made to deter those who choose to sell these drugs to others – and especially minors. The Court must send a strong message that there will be significant punishment if one's choice to sell drugs to others, and especially minors, results in death or serious bodily injury. A low-end Guidelines sentence will do so.

### D. Need to Avoid Unwarranted Disparities

Finally, a low-end Guidelines sentence will minimize sentencing disparities among similarly situated defendants. See 18 U.S.C. § 3553(a)(6). One way of avoiding such disparities is to correctly calculate the Guidelines range. See United States v. Treadwell, 593 F.3d 990, 1011, overruled on other grounds, (9th Cir. 2010) ("Because the Guidelines range was correctly calculated, the district court was entitled to rely on the Guidelines range in determining that there was no 'unwarranted disparity' . . . ."); Gall v. United States, 552 U.S. 38, 54 (2007) ("[A]voidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges.").

Here, under the correctly calculated Guidelines range, other defendants "with similar records who have been found guilty of similar conduct" as defendant can expect a sentence of at least 168 months. See 18 U.S.C. § 3553(a)(6). Therefore, the government's recommended sentence avoids an unwarranted disparity with similarly situated defendants.

### V. CONCLUSION

For the reasons set forth above, the government respectfully

6

requests that defendant be sentenced as follows: (1) a low-end Guidelines custodial sentence of 168 months; (2) a five-year period of supervised release; and (3) a special assessment of $200.

Finally, the government requests that the Court set a restitution hearing no more than 90 days from the date of sentencing. The minor victims are entitled to restitution as they suffered physical injuries as a result of defendant's crimes.  18 U.S.C. § 3663A(c)(1)(B).  At present, however, certain minor victims' losses are not ascertainable as they are still compiling documentation relating to the out-of-pocket expenses they have incurred in connection with this incident.  18 U.S.C. § 3664(d)(5).  The government therefore requests that the Court set a restitution hearing no more than 90 days from the date of sentencing at which time their losses can be determined.